# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| LAYNE R. MEACHAM,<br><br>Plaintiff,<br><br>v.<br><br>LISA CHURCH, Director, Utah Department of Human Services; GENIAL EVERSON, Social Worker; DIANE KERNEY, Social Worker; DUANE BETOURNAY, Director, Utah Division of Child and Family Services; and BONNIE KEOUGH,<br><br>Defendants. | REPORT AND RECOMMENDATION<br><br><br>Case No. 2:08-cv-535-DB-PMW<br><br><br><br><br>**District Judge Dee Benson**<br><br>**Magistrate Judge Paul M. Warner** |

District Judge Dee Benson referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1] There are multiple motions before the court.[2] The court has carefully reviewed the parties' written submissions on all of those motions. Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motions on the basis of the written submissions. *See* DUCivR 7-1(f).

---

[1] *See* docket no. 4.

[2] *See* docket nos. 113, 115, 120, 121, 127, 130, 131.

The court notes that Plaintiff is proceeding pro se in this case. Accordingly, the court will construe his pleadings and other submissions liberally. *See, e.g.*, *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

## BACKGROUND

Layne Meacham ("Plaintiff") was employed as a therapist for Futures Through Choices ("Futures") for nineteen days, from December 13, 2007 until December 31, 2007. Futures is a private non-profit corporation, providing services to developmentally disabled youth and adults. Futures is a private entity, which is wholly separate and apart from the State of Utah and acts independently from the State of Utah.

From 2001 to July 1, 2010, Ben Horman ("Horman") was the regional program manager and Clinical Director ("Director") for Futures, in Ogden, Utah. Horman's duties as the Director for Futures consisted of overseeing youth services, which included supervising therapists and staff and ensuring applicable policies and procedures were followed for the youth regions covering Weber and Davis County, Utah. Horman also provided therapy to individuals in state custody.

Plaintiff was an "at will" employee at Futures, and was not employed by Futures pursuant to a contract nor for any definite period or term of employment. During Plaintiff's employment at Futures, Amber Thrillkill, a staff member at Futures, told Horman that Plaintiff had been accused of improper conduct. The allegations were made by a patient resident whose initials are B.C.

2

Law enforcement and the Utah Division of Child Protective Services were contacted concerning the allegations against Plaintiff.  As a result of those allegations, Plaintiff was placed on paid administrative leave, pending an investigation regarding B.C.'s allegations of improper conduct.  The decision to place Plaintiff on paid administrative leave was based on the accusations made by B.C. and was consistent with both the formal internal policies and procedures of Futures, as well as the policies of the Utah Department of Human Services.

The investigation regarding Plaintiff's conduct was conducted by law enforcement and Child Protective Services.  Subsequently, Horman was informed that B.C. had recanted his accusations against Plaintiff.  Upon learning that B.C. had recanted his accusations against Plaintiff, Horman spoke with Plaintiff, via telephone, and told Plaintiff that the suspension had been lifted and that he was welcome to return to work for Futures.  Plaintiff declined Horman's offer to return to work for Futures and told Horman that he had moved on to other employment.

Horman worked with and knew Defendant Bonnie Keough ("Keough").  Keough has been B.C.'s case manager since June 2005.  In January 2008, Horman spoke with Keough by telephone regarding the allegations made by B.C., and they discussed whether it was in B.C.'s best interest to continue to reside at Futures.  During this telephone conversation, Keough asked Horman if he had access to the SAFE database, which contains information related to investigations conducted by the Utah Division of Child and Family Services.  Horman responded that he did not.  Keough asked Mr. Horman to wait a moment while she spoke to her supervisor.  Keough's supervisor, Chad Woodruff, informed Keough that she could not say anything about the SAFE database.  Upon returning to the phone, Keough told Horman she could not say

3

anything further about the SAFE database. Keough is permitted to access the SAFE database to input and retrieve information related to the cases that she manages. Keough is not allowed to access the SAFE database to retrieve information regarding an ongoing investigation unless she is involved in conducting the investigation.

Although Keough admits to improperly accessing the SAFE database, Keough asserts that, at no time, did she tell Horman or anyone else that Plaintiff was listed on the SAFE database. Keough also asserts that she never said anything disparaging about Plaintiff to Horman. Horman asserts that he has never had access to the SAFE database, nor does he know whether any kind of information regarding Plaintiff is maintained on the SAFE Database.

Based on those events, Plaintiff filed his complaint in this case on July 15, 2008.[3] Plaintiff then filed an amended complaint on December 24, 2008.[4] In a memorandum decision and order dated November 5, 2009, Judge Benson granted a motion for partial summary judgment brought by Defendants Lisa Church, Genial Everson, Diane Kerney, and Duane Betournay (collectively, "Defendants"), which resulted in the dismissal of all of Plaintiff's claims in this case, with the exception of any claims he had for alleged loss of employment with Futures.[5]

---

[3] *See* docket no. 1.

[4] *See* docket no. 28.

[5] *See* docket no. 92.

Subsequently, in January and February 2011, the motions now before the court were filed by the parties. As part of the filings related to those motions, Plaintiff has filed his own affidavit.[6] With the exception of several introductory paragraphs, the overwhelming majority of Plaintiff's affidavit presents his account of conversations he had with several individuals about the above-referenced events. In multiple paragraphs, Plaintiff includes quoted passages that purportedly represent statements those individuals made to Plaintiff during certain conversations.

## ANALYSIS

The motions before the court can be separated into three categories. The first category consists of only one motion, which is Defendants' motion to join the following pleadings: Keough's motion to strike the exhibits included as part of Plaintiff's cross-motion for summary judgment on his stigma plus claim, Keough's opposition to Plaintiff's motion for summary judgment on the state claim for interference with an advantageous business relationship, and Keough's cross-motion for summary judgment on Plaintiff's claim for interference with an advantageous business relationship.[7]

The second category of motions relates to Plaintiff's claim of stigma plus. Those motions include Keough's motion for summary judgment on that claim,[8] Defendants' motion for summary judgment on that claim,[9] Plaintiff's cross-motion for summary judgment on that

---

[6] *See* docket no. 119, Exhibit A; docket no. 120, Exhibit A.

[7] *See* docket no. 131.

[8] *See* docket no. 113.

[9] *See* docket no. 115.

claim,[10] and Keough's motion to strike the exhibits included as part of Plaintiff's cross-motion for summary judgment.[11]

The third category of motions relates to Plaintiff's state claim for interference with an advantageous business relationship. Those motions include Plaintiff's motion for summary judgment on that claim[12] and Keough's cross-motion for summary judgment on that claim.[13] The court will address each category of motions in turn.

## I. Defendants' Motion to Join

In this motion, Defendants seek to join the following pleadings: Keough's motion to strike the exhibits included as part of Plaintiff's cross-motion for summary judgment on his stigma plus claim, Keough's opposition to Plaintiff's motion for summary judgment on the state claim for interference with an advantageous business relationship, and Keough's cross-motion for summary judgment on Plaintiff's claim for interference with and advantageous business relationship. Plaintiff has not opposed the motion. Accordingly, Defendants' motion to join should be granted. In considering the above-referenced pleadings, the court will construe them as being brought together by Keough and Defendants.

---

[10] *See* docket no. 120.

[11] *See* docket no. 121.

[12] *See* docket no. 130.

[13] *See* docket no. 127.

## II. Stigma Plus

### A. Motion to Strike

In this motion, Keough and Defendants seek to strike the exhibits Plaintiff has submitted along with his cross-motion for summary judgment on his stigma plus claim. Pursuant to rule 56 of the Federal Rules of Civil Procedure, an affidavit or declaration used to support or oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be *admissible in evidence*, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4) (emphasis added).

Keough and Defendants argue that all of the exhibits included with Plaintiff's cross-motion for summary judgment on his stigma plus claim constitute hearsay and, therefore, are inadmissible and should be stricken. *See id*. The court has determined that it is necessary to consider Keough and Defendants' motion to strike only as it relates to Plaintiff's affidavit. Because it was unnecessary for the court to consider the other exhibits in considering the motions for summary judgment on Plaintiff's stigma plus claim, the court has determined that it is likewise unnecessary to consider the remainder of Keough and Defendants' motion to strike.

As noted above, Plaintiff's affidavit consists of his account of conversations Plaintiff claims to have had with several individuals. Keough and Defendants argue that Plaintiff's affidavit consists of hearsay, and the court agrees. *See* Fed. R. Evid. 801, 802. Plaintiff's arguments that his affidavit fits into one of the hearsay exceptions are without merit.

Accordingly, Keough and Defendants' motion to strike Plaintiff's affidavit should be granted. The remainder of their motion to strike should be deemed moot.

## B. Motions for Summary Judgment

"Summary judgment is appropriate when there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." *Chastain v. AT&T*, 558 F.3d 1177, 1181 (10th Cir. 2009) (alteration in original); *see* Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the court views "all facts in the light most favorable to the party opposing summary judgment." *Chastain*, 558 F.3d at 1180 (quotations and citation omitted).

Plaintiff asserts a stigma plus claim against Keough and Defendants. That claim fails as a matter of law. In order to establish a stigma plus claim, a plaintiff

> must demonstrate that: (1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that significantly altered [his or] her status as a matter of state law.

*Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004) (alteration in original). Plaintiff has failed to establish either of those elements.

First, Plaintiff does not assert that the statements Keough allegedly made were false. Quite the contrary, Plaintiff essentially concedes that the alleged statements are true. Second, the admissible evidence demonstrates that Plaintiff did not experience an alteration in his employment status as a result of the alleged statements. Instead, the admissible evidence demonstrates that Plaintiff was asked to return to work at Futures and declined that offer.

Because Plaintiff has failed to establish essential elements of his stigma plus claim, that claim must fail as a matter of law. Accordingly, Keough's and Defendants' motions for

8

summary judgment on Plaintiff's stigma plus claim should be granted, and Plaintiff's cross-motion for summary judgment on that claim should be denied.

### III. Interference with an Advantageous Business Relationship

Plaintiff has moved for summary judgment on his claim for interference with an advantageous business relationship. Keough and Defendants have filed a cross-motion for summary judgment on that claim. To prevail on a claim for intentional interference with prospective economic relations, "a plaintiff must demonstrate that (1) . . . the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff." *Anderson Dev. Co. v. Tobias*, 116 P.3d 323, 331 (Utah 2005) (quotations and citation omitted) (alteration in original).

Plaintiff has failed to establish the third and final element of this claim. As noted above, the admissible evidence demonstrates that Plaintiff did not experience an alteration in his employment status as a result of the alleged statements. Instead, the admissible evidence demonstrates that Plaintiff was asked to return to work at Futures and declined that offer. As such, Plaintiff has not established that he suffered any injury as a result of the alleged statements.

Because Plaintiff has not established an essential element of his claim of interference with an advantageous business relationship, that claim fails as a matter of law. Accordingly, Plaintiff's motion for summary judgment on that claim should be denied, and Keough and Defendants' cross-motion for summary judgment on that claim should be granted.

## CONCLUSION AND RECOMMENDATION

In summary, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' motion to join[14] be **GRANTED**.

2. Keough and Defendants' motion to strike[15] Plaintiff's affidavit be **GRANTED**, and the remainder of their motion to strike be deemed **MOOT**.

3. Keough's[16] and Defendants'[17] motions for summary judgment on Plaintiff's stigma plus claim be **GRANTED**.

4. Plaintiff's cross-motion for summary judgment on his stigma plus claim[18] be **DENIED**.

5. Plaintiff's motion for summary judgment on his claim for interference with an advantageous business relationship[19] be **DENIED**.

6. Keough and Defendants' cross-motion for summary judgment on Plaintiff's claim for interference with an advantageous business relationship[20] be **GRANTED**.

---

[14] *See* docket no. 131.

[15] *See* docket no. 121.

[16] *See* docket no. 113.

[17] *See* docket no. 115.

[18] *See* docket no. 120.

[19] *See* docket no. 130.

[20] *See* docket no. 127.

Given that all claims in this case are resolved by this report and recommendation, **IT IS FURTHER RECOMMENDED** that the court direct the Clerk of the Court to enter judgment in favor of Keough and Defendants and close this case.

\* \* \* \* \*

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days after receiving it. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute waiver of objections upon subsequent review.

DATED this 9th day of June, 2011.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge